WHITEHEAD, APPELLANT, v. JESSUP, APPELLEE.

1. ACTION FOR MALICIOUS PROSECUTION—WHAT MUST CONCUR.

The concurrence of malice and want of probable cause is essential to a right of action for a malicious prosecution.

2. MALICE MAY BE INFERRED, WHEN.

Where there is sufficient evidence of want of probable cause justifying the prosecution of the criminal proceeding, malice may be inferred by the jury.

3. ADVICE OF COUNSEL, WHEN A DEFENSE.

That in the prosecution of the criminal cases, the complaining witness acted under the advice of counsel, obtained and used in good faith, after a full and fair statement of all the facts bearing on the guilt

or innocence of the accused of which knowledge might have been obtained by the exercise of reasonable diligence, is a defense to an action against him for malicious prosecution. But it is indispensable that the statement to counsel shall have been full and fair.

4. EVIDENCE.

In an action upon a written instrument, testimony as to conversations and negotiations which preceded and led up to the contract, must be excluded, upon the principle that all such antecedent matters are merged in the writing or disposed of by it, but this rule is not applicable when the issue is as to the existence of probable cause justifying criminal proceedings.

*Appeal from the Superior Court of the City of Denver.*

ACTION for damages sustained by the plaintiff by reason of a criminal prosecution instituted against him by the defendant. The plaintiff recovered judgment, and the defendant appealed. The facts are fully stated by BISSELL, J.

Sometime in 1888 Andrew Whitehead filed a complaint before Sales, a justice of the peace in Arapahoe county, charging Alvin L. Jessup with the crime of obtaining money by false pretenses. Jessup was arrested on a warrant issued under the complaint, examined and discharged. This action was brought by him against Whitehead to recover the damages which he claimed to have sustained by reason of this criminal prosecution. No statement of fact is necessary to an understanding of this controversy other than a narration of what Whitehead claimed were the fraudulent representations made to him by Jessup. Early in 1888 three parties, Appleman, Griswold and Jessup, were jointly and equally interested in an insurance agency which had been incorporated. Jessup had purchased his interest from Griswold and had given therefor his promissory note for $3,000, which was subject to certain credits derived from the profits of the business, and a reduction because of certain conditions under which the sale had been made. Jessup desired to dispose of his interest, and Whitehead and one Herzinger entered into negotiations to buy it. It would appear that they contemplated purchasing the entire agency, but this is unimportant.

At the time of these negotiations Jessup's note to Griswold for $1,500 secured by the pledge of his stock as collateral was outstanding. Griswold was indebted to one Holland for $300 and had pledged this note of Jessup with its collateral with Holland to secure the payment of his note. In some way, which it is not necessary to consider, but subsequent to the maturity both of Griswold's and of Jessup's paper, Appleman purchased from Holland this Griswold note, and received the collaterals which had been delivered to Holland as security therefor. During the negotiations which Jessup had with Whitehead and Herzinger he stated that the only claim against his stock was $372 which he owed to Griswold under the terms of their deal, and the condition of the corporation's books. Whitehead purchased the Jessup interest in the stock and gave him a check for $375 with which to relieve it from the pledge. In the meantime, as stated, the notes and stock had passed into Appleman's hands, who took the $372 which Jessup claimed he owed and which he tendered to him, and then declined to surrender the stock, insisting that he had bought it from Holland and owned it. He gave Jessup a receipt for the money which was taken to Whitehead, who thereupon insisted that Jessup had swindled him, because the stock had been pledged on the fifteen hundred dollar note, and was, as he contended, charged with a liability to that extent. Whitehead insisted upon the return of his money, or the delivery of the stock, and, failing to get either, went to the assistant district attorney to institute criminal proceedings against Jessup.

Messrs. MARKHAM & DILLON, and Messrs. ROSS & DEWEESE, for appellant.

Mr. F. A. WILLIAMS, for appellee.

BISSELL, J., delivered the opinion of the court.

No discussion of the law controlling actions for malicious prosecution can prove profitable. It has been settled by a

long series of adjudications which will furnish precedents for all possible phases of such controversies. It is enough to announce the lines within which this judgment must fall. The concurrence of malice and want of probable cause is essential to the right of action. Both are the proper subjects of proof, and neither are matters of presumption, save that where there is suitable and sufficient evidence of a want of probable cause, malice is a legitimate matter of inference with the jury. *Brown v. Willoughby*, 5 Colo. 1; *Stewart v. Sonneborn*, 98 U. S. 187.

Manifestly these matters are within the province of the jury, or of the trial court. Without some unusual manifestation of passion or prejudice, or the presence of findings in the record which warrant the inference that the conclusions were not controlled by a due regard for the law, appellate courts will be very reluctant to disturb the judgment.

It is comparatively easy to state the universal definition of probable cause. It is expressed in *Brown v. Willoughby*, and was re-defined in substantially the same language in *Clement v. Major*, 1 Colo. Ct. Ap. 297.

Like every other controversy of this description this matter rested upon very conflicting testimony. As to whether what had been discovered by Whitehead would lead a man of ordinary caution and prudence to believe Jessup guilty of the crime with which he charged him, or to entertain an honest and strong suspicion of that guilt, is a matter on which there might possibly be honest and marked differences of opinion. It is undoubtedly true that there were many items of information brought to Whitehead's attention prior to the filing of the criminal information which ought to have raised doubts in the mind of a layman, and grave doubts in the mind of a lawyer like Whitehead, whether Jessup was actuated by a criminal intent in any part of the transaction, and like doubts as to whether his purpose was fraudulent when he made the statements which Whitehead insists led him to part with his money. Since the testimony leaves this matter in the region of uncertainty, it might easily be thought

the appearance of the witnesses had a controlling effect upon·
the mind of the court, and fully justified him in reaching his
conclusion that Whitehead was without probable cause.
This finding cannot be disturbed.    The permissible inference
of malice from the want of probable cause is a complete an-
swer to the contention that malice must be established by
proofs.    It might easily be held that there was proof of facts
and circumstances which would justify the trial court in
finding that Whitehead was actuated by a malevolent purpose.
It is the conclusion of this court that there is no such absence
of proof on these two necessary elements of the action as
warrants the court in disturbing the judgment.

The objection made to the proof of Justice Dormer's
record is not available.    But for the admissions contained in
the pleading, and the limited objection urged to the intro-
duction of the records at the trial, it is quite true that the
receipt of them could not be justified.    There was a failure
to lay the necessary foundation if an issue had been raised
in regard to the matter, and there was clearly a lack of proof
to admit their introduction if the requsite objection had been
taken.    Dormer's official position, and his judicial action in
the premises on the proceedings initiated against Jessup,
were averred in the complaint, and were not so put in issue
as to call for evidence on the subject.    When the record was
offered the only objection interposed was that it was insuffi-
cient and did not show the discharge of the prisoner.    Plainly
this objection raises no question as to the character, or gen-
eral admissibility of the record as such.

During the progress of the trial considerable testimony
was given as to what occurred between the parties prior to
the time of the making of the contract by which their rights
and correlative obligations were expressed and determined.
It is insisted that the court erred in admitting these conver-
sations, and that the parties were concluded by the terms of
their written instrument.    As a general rule all conversa-
tions and negotiations which precede and lead up to a con-
tract are said to be disposed of by the written instrument

and to be merged in it.  For some purposes, and when an action is brought upon the contract, this principle may be invoked, and must be held to exclude such testimony.

In this case, however, the inquiry was as to the existence of probable cause which justified Whitehead in instituting criminal proceedings against Jessup.  To determine it, it was needful to go behind the contract, and to ascertain the extent and the limit of the information which he possessed concerning the pledge of Jessup's stock.

The remaining proposition is one of considerable importance, and the only one of difficulty in the case.  The principal defense was based on the doctrine, that wherever in criminal prosecutions the plaintiff acts under the advice of counsel, used in good faith, and obtained after a full and fair statement of all the facts bearing on the guilt or innocence of the defendant, which he knew, or by reasonable diligence might have obtained, he has a good defense to an action for malicious prosecution.  This rule is conceded.  It has been variously stated, and perhaps with other and further limitations than those heretofore expressed.  Without intending to enunciate a rule applicable to all cases, the one above expressed may be taken as a fair statement of the law.  This leaves the inquiry whether Whitehead fully and fairly stated all the facts within his knowledge, or all which he might and ought to have learned before he instituted criminal proceedings.

Whitehead and Herzinger were jointly interested in the transaction.  They jointly prosecuted whatever inquiries they made, and conjointly made application to the assistant district attorney to file the complaint.  Herzinger had examined the criminal statutes; and the conclusion is irresistible, that Herzinger and Whitehead had discussed the propriety and feasibility of a resort to those statutes to enforce their claim.  That Herzinger was informed of the exact status of the Holland loan, and that he knew that Jessup's stock was collateral on a fifteen hundred dollar note before the complaint was filed, cannot be disputed.  Griswold had

evidently told him all about it, and the whole transaction and the purchase had been a matter of very considerable discussion between Whitehead and Herzinger. The only controversy is whether Whitehead had knowledge of the pledge of Jessup's stock on the fifteen hundred dollar note when he parted with his money. There is much evidence to show that he had that knowledge. On the proof this conclusion would be reached. To uphold the judgment it will be assumed that the trial court reached the same conclusion. In any event, if he had not that knowledge, the slightest inquiry would have enabled him to ascertain two facts : That Appleman purchased the Griswold note from Holland, with the other note and stock attached as collateral subsequent to the maturity of both pieces of paper; and second, that there was no basis whatever for Appleman's contention that he had gotten the stock from Holland in such fashion as to give him any title to it, except that growing out of Griswold's rights to the fifteen hundred dollar note. If these things, with what other information he had, had been stated to counsel, it is hardly probable that the attorney would have advised a criminal prosecution. It is certainly true that if he had been told that Whitehead knew that the stock had been pledged as collateral for a fifteen hundred dollar note before he went into the transaction, he would not have advised that a false pretense could be predicated on a deceit practiced by concealment of the extent of the pledge. Whitehead was evidently advised of the nature and character of the transaction between Griswold and Jessup, and was charged with information which would lead an ordinarily prudent business man to conclude that he was buying stock which was not in Jessup's possession, and subject to the assertion of a claim by a pledgee about which he was bound to inquire unless he was willing to take chances on the purchase. At all events it is the conclusion of this court that there was no such fair and full statement to counsel as is indispensable when his advice is to be interposed as a shield to a recovery in this sort of an action.

Our conclusions are in entire harmony with those of the trial court on this proposition.

No other error assigned is of sufficient importance to justify a discussion, and there is none apparent in the record sufficiently well grounded to warrant a reversal of the judgment, which will therefore be affirmed.

*Affirmed.*